# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| FRED A. COLVIN, CHAIRMAN of the BOARD of TRUSTEES of and on behalf of BRICKLAYERS UNION LOCAL NO. 6 of INDIANA PENSION FUND; JOSEPH BRAMLETT, TRUSTEE of and on behalf of BRICKLAYERS and TROWEL TRADES INTERNATIONAL PENSION FUND; WILLIAM SOLIVAIS, CHAIRMAN of the BOARD of TRUSTEES and on behalf of BRICKLAYERS UNION NO. 6 of INDIANA HEALTH & WELFARE FUND; JOHN M. ARGENTA, SECRETARY of the BOARD of TRUSTEES and on behalf of the INTERNATIONAL UNION of BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 4 of IN & KY APPRENTICE FUND; JOSEPH BRAMLETT, TRUSTEE of and on behalf of INTERNATIONAL MASONRY INSTITUTE and BRICKLAYERS LOCAL NO. 4 of IN & KY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:06-CV- 351 JVB |
| LARRY E. WEBB CONSTRUCTION COMPANY, INC. and LARRY E. WEBB | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment against Defendants Webb Construction Company, Inc, and Larry E. Webb individually. For the reasons set forth below Plaintiffs' Motion is **GRANTED.**

**BACKGROUND**

Plaintiffs' First Amended Complaint sets out claims under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*, ("ERISA"), specifically under Sections 502 and 515, 29 U.S.C. §§ 1132 and 1145.  Plaintiffs include the trustees of five employee benefit trust funds ("Trust Funds") and the International Union of Bricklayers Local No. 4 of IN & KY ("Union").

According to Plaintiffs,  Defendant Larry E. Webb Construction Company signed a collective bargaining agreement with the Union in which Webb Construction agreed to be bound by the latest Agreement between the Union and the Indiana Mason Contractors Statewide Association, Inc, and any subsequent extensions, amendments and subsequent Agreements between the Union and the Mason Contractors ("Master Agreements") as well as the terms of any Trust Fund Agreements identified in the Master Agreements. Plaintiffs further contend that the Trust Fund Agreements permit Plaintiffs to conduct field audits of payroll and related records to insure that the appropriate employer contributions are made to the Funds.  Plaintiffs ask that Defendant Webb Construction make certain records available to the Trust Funds' payroll auditors and pay any contributions found to be due.

Plaintiffs filed their Motion for Partial Summary Judgment on June 22, 2007, seeking an order against both Webb Construction and Larry Webb which would permit the Plaintiffs to perform a full audit of  payroll and related records for all of Defendants' employees for the period from June 26, 2002, through the present.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with

affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate

4

the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## FACTS

The facts set out below are taken from Plaintiffs' Statement of Material Facts Not in Dispute and have not been challenged by Defendants unless otherwise stated.

On June 26, 2002, Defendant Webb Construction signed a Memorandum of Agreement with the Union. The 2001 Master Agreement and the subsequent 2004 Master Agreement, which Plaintiffs claim Defendant adopted by signing the Memorandum of Agreement, require that certain contributions be made to the Plaintiff Trust Funds[1] and to the Plaintiff Union. The Master Agreements and the Trust Fund Agreements require signatory contractors to submit to audits of payroll and related records to verify the accuracy of the contributions and deductions submitted by the employer. The Agreements make the employer liable for all costs for collection of payments, with attorney fees, costs, and such liquidated damages and late charges as may be assessed by the trustees of the Trust Funds or the Union.

By letters dated June 29, 2004, and May 20, 2005, *inter alia*, the Plaintiffs attempted to obtain cooperation from Defendants for an audit for the period beginning on June 22, 2002. Webb Construction provided information for the period from June 2002 to December 2002 but has refused to produce records for 2003 and later years. Defendants claim they have paid all that is due to Plaintiffs for hours any Union members worked as bricklayers, but that these employees

---

[1] In their Motion for Partial Summary Judgment, at page 2, numbered paragraph 1, Plaintiffs omit Plaintiff International Masonry Institute from the list of entities collectively identified as "Trust Funds."

5

also did work not covered by the collective bargaining agreements, so that no fringe benefits are owed for those hours.

In their response brief and supporting affidavit, the Defendants do not dispute any of the facts set forth above.  Instead they charge that the Memorandum of Agreement was a contract of adhesion which is contrary to public policy and unenforceable.  They claim that there is a genuine issue as to whether Larry Webb had a reasonable opportunity to read, understand or seek legal counsel to determine the legal obligations Webb Construction would be assuming by signing the Memorandum of Agreement.  They also claim that a genuine issue exists as to whether Webb Construction terminated the Memorandum of Agreement prior to the time periods for which Plaintiffs seek audits.

In his Affidavit Defendant Larry Webb states that he graduated from high school in 1962. Webb Construction is a family owned general construction contracting business which was incorporated in 1978. Sometime before June 26, 2002, Webb Construction entered into a contract for a construction project which required  the employment of bricklayers.  Several experienced union bricklayers were hired.  Several weeks after the bricklayers were hired, and their skills had become critical to the completion of the project, Larry Webb was approached on the job site by Gerald T. Brown, who identified himself as a field representative for the International Union of Bricklayers & Allied Craftworkers Local 4 of IN & KY.  Brown asked Webb whether Webb Construction was a signatory to any union agreement.  Webb responded in the negative.  Brown told Webb that members of Brown's union were working on the job and handed him the Memorandum of Agreement, a single-page typed document.  While Webb looked at the document Brown told him that if Webb did not sign, Brown would force his union

members off the job.  Webb believed that Webb Construction's only option was to sign the document if it wanted to avoid interruption and delay on the job.  He was unaware of the terms of the agreement when he signed it.  In early 2004 Webb submitted a letter to the Bricklayers' Union Local 4 which he claims terminated the Memorandum of Agreement.  He did not receive a response to the termination letter from the Union.

The Plaintiffs submitted the Affidavit of Gerald T. Brown as part of their reply to the Defendants.  Brown stated that the Union's file on Webb Construction contains a letter from Webb dated June 14, 2004, (a copy is attached to the Affidavit) purporting to terminate membership in the Union.  Brown further stated that the Union has no other letters from Defendants regarding termination of the Memorandum of Agreement or other agreements.

## ANALYSIS

Plaintiffs rely on *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559 (1985) in support of their request for an order allowing them to audit all Webb Construction's payroll and related records from 2002 to the present.  Defendants raise no arguments that the Memorandum of Agreement, incorporated Master Agreements and case law do not provide for the relief the Plaintiffs seek.  Rather, they claim that there are genuine issues as to whether the Agreement itself is enforceable, whether the contract was cancelled, and whether Defendant Webb Construction's President, Larry E. Webb, had a reasonable opportunity to read, understand or consult a lawyer to determine the legal obligations Webb Construction would assume under the Memorandum of Agreement, Master Agreements and Trust Fund Agreements.  Thus Defendants have in essence conceded that Plaintiffs are

entitled to the full audit they request unless one of these defenses is valid.

**A. Claim of Unconscionability.**

Defendants argue that there is a genuine issue[2] as to whether the Memorandum of Agreement with the Union that Larry Webb executed on behalf of Webb Construction is an unconscionable contract of adhesion in contravention of public policy which should not be enforced.[3] Nonetheless, they fail to cite any case where a court has refused to enforce an agreement adopting a collective bargaining agreement on those grounds. Plaintiffs respond that any challenge the Defendants might have had to the legality of the Memorandum of Agreement should have been brought before the National Labor Relations Board as an unfair labor practice charge under Section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3), within six months of the execution of the Memorandum. However, Plaintiffs cite no authority for the proposition that the NLRB is the exclusive, or even an appropriate forum for determining whether a collective bargaining agreement is unenforceable on the grounds Defendants argue.

Courts interpret ERISA claims and claims based on labor agreements according to a federal common law of contracts. *See GCIU Employer Ret. Fund v. Chicago Tribune Co.,* 66 F.3d 862, 864–865. This Court's independent research has failed to uncover a single case where

---

[2]Significantly, however, Defendants do not, nor could they, argue that there are genuine issues of *material fact* on the questions of unconscionability and contravention of public policy for these are questions of law for the Court to decide, as Defendants correctly state in their brief at page 7.

[3]The Court doubts that the Memorandum of Agreement and the contracts and trusts it incorporates by reference can truly be considered contracts of adhesion. Defendants define the term as a "standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain. *Black's Law Dictionary* at 40 (6th ed. 1990)." *See* Defendants' Resp. Br. at 5. Clearly, neither Webb Construction nor Larry Webb is a 'consumer' (defined in *Black's Law Dictionary, 8th Ed.* as "a person who buys goods or services for personal, family or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes."), *vis-a-vis* the Union.

an employer has been excused from performing its obligations to an employee benefit plan established under a collective bargaining agreement on the grounds that the agreement was a contract of adhesion, unconscionable, or against public policy.  Moreover, even where valid defenses may exist between a union and employer under a collective bargaining agreement, the Seventh Circuit Court of Appeals has interpreted  ERISA § 515[4] (29 U.S.C. § 1145) to allow a pension fund to enforce the agreement according to its terms without regard to those defenses, with certain exceptions not argued here. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1152–53 (7th Cir. 1989).

As to the claimed contravention of public policy, the Court must measure the contract against the public policy of the United States, rather than that of the State of Indiana, as Defendants argue, to determine whether the Memorandum of Agreement should be enforced. Defendants fail to direct the Court's attention to any federal source in support of their assertion that enforcement of the Memorandum of Agreement would contravene the public policy of the United States. Defendants' arguments fail to persuade this Court that the Memorandum of Agreement offends the public policy of either the United States or the State of Indiana.

By the Defendants' own admission, in order for a contract to be declared unenforceable as unconscionable under Indiana case law, the contract must be one that no sensible person, not under delusion, duress or distress would make, and such that no honest and fair person would accept.  *See* Defendants' Resp. Br. at 10.  While the Defendants may have been distressed and

---

[4]That section provides:
> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

under duress at the threat of labor strife if they did not sign, the Court rejects the claim that no honest and fair person would accept labor peace in exchange for the obligations created by signing the Memorandum of Agreement.  Accordingly, the Court finds as a matter of law that the Memorandum is neither unconscionable nor against public policy.

**B.  Claim Regarding Cancellation.**

  Defendants state that there is a genuine issue as to whether the Memorandum of Agreement was cancelled.  Plaintiffs point out that the Memorandum of Agreement binds the parties to the current and any subsequent agreement "unless either party serves written notice upon the other at least (90) [sic] days but not more than one hundred twenty (120) days prior to the stated expiration date" of the Master Agreement or any subsequent Master Agreement of its desire to terminate the Memorandum of Agreement.  The Master Agreement in effect on June 26, 2002, when Webb signed the Memorandum of Agreement, expired on May 31, 2004.  Accordingly, the window of opportunity for timely termination of the Memorandum of Agreement would have been the thirty day period from February 1 through March 2, 2004.

  Webb claims in his Affidavit that he submitted a letter to the Bricklayers' Union terminating the Memorandum of Agreement in "early 2004."  The Union, on the other hand, has produced a letter from Webb dated June 14, 2004, which purports to cancel the Memorandum of Agreement. Gerald T. Brown, Jr., on behalf of the Plaintiffs,  maintains in his Affidavit submitted with the Plaintiffs' reply brief, that no other letters purporting to terminate the Memorandum of Agreement can be found in the Union's files. Clearly if the June 14 letter is the only letter Webb sent to give notice of termination, it was untimely and ineffective to terminate

the Memorandum of Agreement.

The Court notes that Defendants offer no documentary evidence of a timely termination letter. They do not challenge the authenticity of the June 14 letter.  Neither do they assert that more than one letter was sent to terminate the Memorandum of Agreement. They never claim that any termination letter was sent between February 1 and March 2, 2004.  The Court determines that no reasonable jury could conclude, solely on the basis of Larry Webb's statement that he submitted a letter to the Union "in early 2004," that Webb Construction had effectively terminated the Memorandum of Agreement by serving written notice on the Union during the thirty-day period from February 1 through March 2, 2004, as required by the Memorandum of Agreement.

**C.  Claim Regarding Larry Webb's Opportunity to Read and Understand the Contract**

In his Affidavit Larry Webb stated that when he signed the one-page Memorandum of Agreement, he was unaware of its terms, yet Defendants offer no authority to suggest that Webb Construction should not be bound by the agreement because its President did not take the time to acquaint himself with its terms before signing.  In the absence of fraud (which Defendants do not allege) a man in possession of his faculties who signs a contract cannot relieve himself from the obligations of the contract by saying he did not read it when he signed it, or did not know or understand what it contained.  *See Upton v. Tribilcock,* 91 U.S. 45 (1875); *Employee Painters' Trust v. J & B Finishes,* 77 F.3d 1188 (9th Cir. 1996).  A person is assumed to have read and understood the documents he signed; a lack of understanding or failure to read the contract's provisions does not relieve a party from the terms of that agreement.  *See DeGroff v. MascoTech*

11

*Forming Techs. Fort Wayne, Inc.*, 179 F.Supp 2d 896, 903, (N.D. Ind. 2001) and cases cited therein.  The Court rejects Defendants' contention that a jury question is presented as to whether Larry Webb had a reasonable opportunity to read or understand what he was signing.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Partial Summary Judgment is **GRANTED.**   Defendants Larry E. Webb Construction Company, Inc. and Larry E. Webb shall permit Plaintiffs to conduct a full payroll and related records audit of Defendants' books and records involving all of Defendants' employees for the period of June 26, 2002, through the present.

SO ORDERED on February 25, 2008.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge